PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERICH MARTIN,                          )
                                       )   CASE NO. 4:16CV1619
            Plaintiff,                 )
                                       )
        v.                             )   JUDGE BENITA Y. PEARSON
                                       )
JOHN DOES, *et al.*,                   )
                                       )
            Defendants.                )   **MEMORANDUM OF OPINION AND**
                                       )   **ORDER** [RESOLVING ECF NOs. 37 &
                                           47]

Pending before the Court are two motions for summary judgment: (1) Plaintiff Erich

Martin's Partial Motion for Summary Judgment (ECF No. 37), and (2) Defendants Officer Max

Capito, Sergeant Robert Eckenrod, Officer Nicholas Massary, Officer Christopher Rowlands,

Officer Tyler Wesolowski, Lieutenant Dan Lester, and Trumbull County Commissioners'

Motion for Summary Judgment (ECF No. 47).  The parties have responded to the motions.  ECF

Nos. 49 & 51.  The parties have also filed replies.  ECF Nos. 52 & 53.  For the reasons that

follow, the Court denies Plaintiff's motion and grants in part and denies in part Defendants'

motion.

**I: Background**

On January 14, 2016, Ohio State Trooper Weiss pulled over Plaintiff Erich Martin on

suspicion of operating a vehicle while intoxicated.  ECF No. 41 at PageID 380-81.  Plaintiff had

multiple narcotics in his system, and was weaving between lanes while driving.  *Id.* at PageID #:

382.  Plaintiff was not an Ohio resident.  Rather, he was driving from Bay City, Michigan back

1

(4:16CV1619)

to his home outside of Philadelphia, Pennsylvania. *Id.* at PageID #: 32. After concluding that

Plaintiff was, in fact, intoxicated, Trooper Weiss transported Plaintiff to the Trumbull County

Jail. *Id.* at PageID #: 382-83.

The practice at the Trumbull County Jail for an individual brought in on a DUI is that, in

order for the individual to leave, they must call for a ride to have someone else pick them up;

otherwise the jail will hold the person until they are sober enough to leave. ECF No. 43 at

PageID #: 546-47. Plaintiff received a summons, and therefore, he was free to leave the jail, as

long as he had a ride to pick him up from the jail. *Id.* at PageID #: 546.

Plaintiff made the one phone call the jail permitted him, and once that call ended, Officer

Rowlands ordered Plaintiff to go to a holding cell. *Id.* at PageID #: 550. Plaintiff refused.

Officer Rowlands contends that he ordered Plaintiff to return to the holding cell two times, and

both times Plaintiff responded by saying "No." *Id.* Plaintiff disputes this claim, and instead

asserts that he simply remained standing where he was. ECF No. 41 at PageID #: 398-99.

Plaintiff admits, however, that Officer Rowlands asked him to return to the holding cell twice,

though he claims that the two requests came within seconds of each other. *Id.* at PageID #: 399-

400.

Due to Plaintiff's failure to follow Officer Rowland's commands, multiple officers

surrounded Plaintiff. ECF No. 43 at PageID #: 537. Officer Rowlands claims to have ordered

Plaintiff to return to the holding cell again and that Plaintiff refused his command a third time.

*Id.*

2

(4:16CV1619)

Officer Rowlands testified that after the third refusal, he took Plaintiff by the right arm, and Officer Nicholas Massary took Plaintiff by the left arm to escort Plaintiff into the holding cell, which was about ten feet away from where Plaintiff was standing. *Id.* at PageID #: 538. Officer Rowlands testified that, as he and Officer Massary were escorting Plaintiff, Plaintiff was dragging and pushing his feet. *Id.* In addition to Officers Rowlands and Massary, Officer Max Capito also escorted Plaintiff to his cell, though he was not holding Plaintiff. ECF No. 46 at PageID #: 774-75. Officer Rowlands testified that once the officers got Plaintiff to the cell, he swept Plaintiff's legs out from underneath him, because Plaintiff continued to resist and he was unsure what Plaintiff was going to do next. ECF No. 43 at PageID #: 540.

Once Plaintiff was on the ground, the officers attempted to handcuff him, but Plaintiff was holding his hands underneath himself. *Id.* at PageID #: 541. Because the cell door closed slowly–and, thus, would allow Plaintiff the opportunity to launch an attack on the officers while the door was closing–Officer Rowlands felt it necessary to handcuff Plaintiff. *Id.* at PageID #: 542. Officer Massary testified that after the handcuffs went on Plaintiff's right hand, Plaintiff attempted to bite Officer Massary. ECF No. 42 at PageID #: 470.

After seeing the resistance that Plaintiff was showing toward Officers Rowlands and Massary, Sergeant Robert Eckenrod decided that the situation posed a risk of injury to the officers or Plaintiff, so he warned Plaintiff that he would deploy his taser, unless Plaintiff ceased resisting. ECF No. 48 at PageID #: 982-83. Sergeant Eckenrod then deployed the taser once. *Id.* at PageID #: 983. After the taser use, Officer Tyler Wesolowksi was able to secure the

3

(4:16CV1619)

handcuffs on Plaintiff. ECF No. 43 at PageID #: 545. The officers then took the handcuffs off

Plaintiff about thirty minutes later after Plaintiff had provided assurance of good behavior. *Id.*

Plaintiff disputes much of Defendants' account of what happened. His recollection is as

follows:

> After I had called my wife ... I walked back up to the desk and I was told to get back
> in the holding cell. I said, you know, he said, get back in you cell or else something
> along those terms. Before I could say, can I make another phone call, the officers
> were already on their way over to me. At that point, I don't know what to do, to be
> quite honest with you, because I was frightened because I didn't know that was going
> to happen. When they approached me, they knocked me to ground, which ones and
> how many, I'm not sure. When I was on my face to the ground, my right arm was
> taken back. The other officer had my other arm. Due to the surgeries on my spine,
> my arm only goes back so far in such ways. The officer was pulling it back. I was
> trying to resist so I could get it to go back in a different way. When I did that, I
> turned around, I looked at him, I never said a word, he got my arm back, they
> handcuffed me, then they literally picked me up off the ground, took me into the cell,
> where they dropped me on my face on the cell floor. One officer had his knee in the
> back of my head, his hand on the back of my head, and the other officer then
> tase[re]d me twice."

ECF No. 41 at PageID #: 387-88.

Though Plaintiff disputes much of Defendants' testimony, he admits the following: (1)

that he walked to the desk after he finished his phone call; (2) that he did not follow Officer

Rowlands' command to go into the holding cell; and (3) that he resisted giving up his left arm to

the officers. *Id.* at PageID #: 387-88. Plaintiff claims that he refused Officer Rowlands' order

because he wanted to request another phone call, but he was unable to do so, claiming that the

situation occurred too quickly for him to voice his request. *Id.* at PageID #: 387. Additionally,

he claimed that he refused to give up his arm, because spinal surgeries limited his arm mobility.

*Id.* Plaintiff contends that he did not raise the concern related to his arm mobility, because he

4

(4:16CV1619)

"was approached in such an aggressive way that [he] was afraid to open [his] mouth or make any motions whatsoever." *Id.* at PageID #: 389.

Critically, Plaintiff also disputes the notion that the tasering occurred prior to the handcuffing, as Plaintiff claims that the officers only tasered him after they had handcuffed him. *Id.* at PageID #: 388.

Plaintiff claims that he suffered the following injuries: (1) "overwhelming pain in the back of his neck;" (2) an acute stress reaction that produced flashbacks, hyper-vigilance, and an exaggerated startle response for about three weeks after the event; and (3) effusion and mild patella femoral tenderness of the right knee. *Id.* at PageID #:406-10.

Plaintiff seeks recovery against Defendants for violations of his Fourth Amendment rights. In his second amended complaint, Plaintiff asserts three causes of action: (1) a Fourth Amendment claim; (2) a spoliation claim; and (3) a *Monell* claim. ECF No. 26. In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff stated that he was withdrawing both the spoliation claim and the *Monell* claim. ECF No. 51 at PageID #: 1052. Because of Plaintiff's withdrawal of Counts II and III, there are no pending claims against Defendants Lester and Board of Trumbull County Commissioners. Those Defendants are dismissed.[1]

## II: Standard of Review

---

[1] The parties should have discussed the withdrawal of these claims during the pre-dispositive motion communications that they were required to undertake pursuant to the Case Management Order, and thereby obviated the need for Defendant to brief those issues.. ECF No. 16 at PageID #: 76.

(4:16CV1619)

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

6

(4:16CV1619)

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Discussion

In cases brought against public officials in their individual capacity, the general rule is that "government officials performing discretionary functions are generally shielded from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis has two prongs: (1) whether the facts that a plaintiff has alleged or shown constitute a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct.

7

(4:16CV1619)

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Clearly established means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "the salient question. . . is whether the state of the law. . . gave . . . fair warning that [the] alleged treatment . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Once a state official "raise[s] a qualified immunity defense, 'it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity.'" *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006)).

Before addressing the uses of force, the Court will first address a preliminary argument that Plaintiff has made.

**A. Right to Detain Plaintiff**

Plaintiff argues that State Trooper Weiss had already released him on summons, making Defendants' use of force common law battery. ECF No. 37 at PageID #: 210. This argument fails. Even though Defendants did not levy any charges on Plaintiff, they had the right to hold him for a temporary period of time.

The temporary seizure of an intoxicated individual is permissible where probable cause to believe the individual is a danger to herself or others exists. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999); *see also Meehan v. Thompson*, 763 F.3d 936, 941 (8th Cir. 2014) ("[I]t may be reasonable under the Fourth Amendment for a police officer, acting in his capacity as community caretaker, to seize an apparently intoxicated individual to ensure the safety of the public and/or the individual, regardless of any suspected

8

(4:16CV1619)

criminal activity.")(quotation omitted). The Eighth Circuit employs a balancing test, whereby it

requires that the government's interest in exercise of the community caretaking function must

outweigh the individual's liberty interest in remaining free of arbitrary government interference.

*Meehan*, 763 F.3d at 941 (citation omitted).

The temporary detention of Plaintiff satisfies both the probable cause requirement and the

balancing test.

As to probable cause, Defendants have shown that Plaintiff was a risk to himself and

others. Releasing Plaintiff would have left him alone and intoxicated in a city in which he had

only intended to drive through, and therefore, did not have any connection. As Lieutenant

Lester[2] explained, it is common to hold intoxicated individuals until they sober up or secure

transport from the jail, because there is "a potential risk of being run over by a car or the myriad

of things that could happen." ECF No. 44 at PageID #: 639. The risk of harm surely increases

when the intoxicated individual must venture through an area foreign to him. Moreover, it was

not the case that Plaintiff was only moderately impaired, as, according to Trooper Weiss's

report, Plaintiff failed all of the field sobriety tests he underwent. ECF No. 50-4 at PageID #:

1032.

As to the balancing test, the risks articulated above outweigh Plaintiff's liberty interest.

The infringement of liberty was no more than necessary, especially because Defendants would

---

[2] Lieutenant Lester was not at the jail during the time of Plaintiff's detention.
Rather, Lieutenant Lester watched the video related to the use of force against Plaintiff.
That video no longer exists, however, and is, therefore, unavailable for review in this
case.

have allowed Plaintiff to leave before sobering up if he had secured transportation. Plaintiff's

failure to comprehend that he could have left if he simply used his phone call to secure a

taxi–which he did after he sobered up–underscores the fact that Plaintiff was too intoxicated to

think clearly, and therefore, was a risk to himself and others.

In sum, Plaintiff's argument that Defendants had no right to detain him temporarily fails.

**B. Use of Force**

Plaintiff argues that Defendants "seized and pummeled" him for "simply balking on

being ordered to return to the holding cell," in violation of his Fourth Amendment rights. ECF

No. 37 at PageID #: 211.

Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed.

2d 443 (1989).  In reviewing whether an officer's "particular use of force" is proper, courts

should not judge the reasonableness of the officer's actions with the benefit of 20/20 hindsight

but should judge it "from the perspective of a reasonable officer on the scene." *Dorsey v. Barber*,

517 F.3d 389, 399 (6th Cir. 2008).  The Fourth Amendment's reasonableness inquiry is an

objective one.  "[T]he question is whether the officers' actions are 'objectively reasonable' in

light of the facts and circumstances confronting them, without regard to their underlying intent

or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out

of an objectively reasonable use of force; nor will an officer's good intentions make an

objectively unreasonable use of force constitutional." *Graham*, at 397 (citations omitted).

(4:16CV1619)

Evaluating the use of force "requires a 'careful balancing' of the individual interest in being free

from unreasonable seizures and the important governmental interest in protecting the safety of its

peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th

Cir. 2007).

Based on the parties' briefing, there are two purportedly excessive uses of force: (1) the

takedown of Plaintiff and (2) the subsequent use of the taser. The Court addresses each in turn.

### 1. The Takedown

Plaintiff argues that he was "seized, escorted, tripped, subdued, and tase[er]d."[3] ECF No.

37 at PageID #: 210. In a subsequent filing, Plaintiff characterizes Defendants' conduct as

"manhandling." ECF No. 51 at PageID #: 1051.

Although Plaintiff claims that the officers' use of force escorting Plaintiff to the holding

cell, and the use of the takedown at the holding cell proved excessive, the undisputed facts

compel a different conclusion.

An officer may use a takedown move when a detainee refuses to comply with orders. *See*

*Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015) (holding that use of knee strike and taser did

not constitute excessive force due to Plaintiff's admission that he was trying to prevent officer

from handcuffing him); *Wallace v. City of Shelby*, 968 F.Supp. 1204 (N.D.Ohio 1997) (holding

that use of a leg sweep to subdue a suspect that refused to comply with order to give up her

hands did not violate suspect's Fourth Amendment rights); *Ehlers v. City of Rapid City*, 846 F.3d

---

[3] The issue of whether the seizure was unlawful has been addressed above, and
the issue of whether the use of the taser was permissible is addressed below.

11

(4:16CV1619)

1002, 1010-11 (8th Cir. 2017) (holding that officer's use of spin takedown on a suspect who kept

walking after officer told suspect to place his hands behind his back did not violate suspect's

Fourth Amendment rights).

Plaintiff admitted that he did not follow the officer's order to return to the holding cell.

ECF No. 41 at PageID #: 387.  In this case, the physical encouragement employed to move

Plaintiff to the holding cell was not a use of excessive force.  Additionally, although Plaintiff

claims that one of the officers kneed him in the head, his medical records dispel that claim, as the

only physical injuries noted were to his right knee.  _Id._ at PageID #: 407.  Indeed, the report from

his January 16, 2016 visit to an urgent care clinic did not list any bruising to Plaintiff's neck;

rather, the report describes Plaintiff's neck as "supple."  _Id._

### 2.  Use of Taser

Having addressed the repeated tasering of a suspect, the Sixth Circuit has held "[c]ases

from this circuit and others ... adhere to this line if a suspect actively resists arrests and refuses to

be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."

_Hagans v. Franklin County Sheriff's Office_, 695 F.3d 505, 509 (6th Cir. 2012).  Conversely, the

Sixth Circuit held that the use of a taser amounted to excessive force when a suspect was

compliant or had stopped resisting.  _Id.; see also  Butlema v. Benzie County_, 146 F.App'x. 28, 35

(6th Cir. 2005) (citation omitted) "[i]t is well established in this circuit that the gratuitous use of

force on a suspect who has already been subdued and placed in handcuffs is unconstitutional.").

Although Defendants contend that Sergeant Eckenrod only used the taser before

handcuffing Plaintiff, Plaintiff disputes that notion.  Defense counsel directly asked Plaintiff

(4:16CV1619)

whether he was tasered *after* he was handcuffed, and Plaintiff responded "absolutely." ECF No. 41 at PageID #: 388. This dispute amounts to a question of material fact, as the time at which Plaintiff was tasered–pre or post-handcuff–affects the excessive force analysis. *Compare Caie v. West Bloomfield Tp.*, 485 F.App'x. 92, 96-97 (6th Cir. 2012) (holding that use of taser to compel an individual to surrender his hands for handcuffing) *with Wells v. City of Dearborn Heights*, 538 F.App'x. 631 (6th Cir. 2013) (holding that officer's use of taser on a handcuffed suspect violated suspect's Fourth Amendment rights).

Defendants have ignored Plaintiff's testimony that he was handcuffed at the time of tasering, and instead, have argued that "[t]he use of a taser in order to cause an individual to remove his arms from under his body and allow him to be handcuffed, is not only objectively legally reasonable, but also consistent with clearly established law." ECF No. 47 at PageID #: 800. Although Defendant's legal proposition may be correct, it does not apply to the facts of this case. Plaintiff concedes that he refused to give up his left hand to be handcuffed, but he claims that this occurred before the tasering. Therefore, Defendants' reliance on *Caie* proves unavailing.

## IV: Conclusion

Because of the genuine issue of material fact as to when Plaintiff was tasered, the case will go forward as to that Fourth Amendment claim only. No factual disputes exist as to the use of the leg sweep or the alleged application of a knee to the back of Plaintiff's neck. Therefore, Plaintiff's Motion for Partial Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted in part and denied in part. Defendant's Motion is denied as to the

13

(4:16CV1619)

taser incident, and granted as to all other Fourth Amendment issues.  Therefore, going forward,

the dispute will focus on the use of the taser against Plaintiff.  Because Plaintiff has withdrawn

Counts II and III of his claim, Defendants Lieutenant Dan Lester and Board of Trumbull County

Commissioners are hereby dismissed as parties.


        IT IS SO ORDERED.


 November 21, 2017                           */s/ Benita Y. Pearson*
Date                                     Benita Y. Pearson
                                         United States District Judge